UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARITY SHONK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:21-CV-1312-AGF |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Charity Shonk filed this action under the Federal Tort Claims Act (FTCA) after she sustained an injury on the grounds of the Gateway Arch National Park. The matter is now before the Court on the government's motion to dismiss the complaint for lack of subject matter jurisdiction. Doc. 9. For the reasons set forth below, the motion will be granted, and the case will be dismissed.

## BACKGROUND

The iconic Gateway Arch sits on a 91-acre national park on the bank of the Mississippi River in downtown St. Louis, Missouri. Every July, over Independence Day weekend, the park serves as the site of Fair Saint Louis, a public festival offering music concerts, food and drink vendors, and nighttime fireworks. In order to hold this event in the park, the corporate entity Fair Saint Louis LLC (FSL) obtains a special use permit from the U.S. National Park Service (NPS). Pursuant the permit, FSL is responsible for coordinating with the St. Louis Metropolitan Police Department to ensure adequate

1

security for the event.  FSL must submit a site map of all planned installations and activities and a sponsorship signage plan for NPS approval.  The use of stakes or posts in the ground must be approved by NPS.  FLS is responsible for any damage to the sod, shrubbery, and irrigation caps.  FSL must provide lighting towers to ensure the safe departure of visitors.  And an indemnification clause relieves the United States of any liability for personal injuries occasioned by FSL's activities on the premises.

According to her complaint, Plaintiff attended the fair on July 4, 2019, and departed around 10 p.m. after the fireworks show.  The police department had blocked off certain pedestrian paths for EMS vehicles, diverting fairgoers to exit the park through the grass.  As Plaintiff advanced with the crowd, her foot lodged under an unmarked concrete lid covering an electrical panel in the ground while her momentum propelled her body forward, resulting in a "gruesome" injury to her ankle.  She underwent surgery and missed four months of work.  Plaintiff filed this negligence action asserting that NPS had a duty to her, as an invitee, to maintain the premises in safe condition, and that NPS breached that duty by failing to install warning signs, lighting, and/or barricades to protect visitors from the hazard.  In response to the complaint, Defendant filed the present motion to dismiss the case on numerous grounds.

As an initial matter, Defendant seeks to dismiss the original complaint because it names NPS as the defendant entity, rather than the government itself.  Defendant is correct that a federal agency cannot be sued under the FTCA; rather, the United States is the proper defendant.  *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002).  Plaintiff concedes this error and requests leave to amend her complaint to name the

United States as Defendant.  Courts should freely give leave for such amendments when justice so requires, but denial of leave to amend a complaint may be justified if the amendment would be futile.  Fed. R. Civ. P. 15(a)(2); *Geier v. Missouri Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013).  Plaintiff's amendment is arguably futile here, as the Court ultimately concludes that it lacks jurisdiction in this matter.  However, the Court prefers to apply the relevant law to a complaint naming the proper defendant and will therefore grant the motion, if only to examine the perfected complaint for purposes of the analysis.[1]

On the merits, the Defendant United States asserts that the Court lacks subject matter jurisdiction in this case because the government has not waived sovereign immunity shielding it from liability under the FTCA.

## LEGAL STANDARDS

**Rule 12(b)(1)**

A district court has the authority to dismiss an action for lack of subject matter jurisdiction on (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008).  Thus, when ruling on a Rule 12(b)(1) motion, the Court may consider materials outside the pleaded allegations of the complaint.  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).  The trial court is free to weigh the evidence and satisfy

---

[1] Accordingly, the Court has changed the caption to reflect the United States of America as the proper party defendant.

3

itself as to the existence of its power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* The plaintiff bears the burden to prove that jurisdiction does in fact exist. *Id*.

Consistent with these principles, the Court considers not only Plaintiff's complaint but also the additional undisputed facts and evidence submitted by the parties. Disposition does not require the Court to resolve any factual dispute here.

**FTCA Jurisdiction**

It is well settled that the United States may not be sued without its consent. *Metter v. United States*, 785 F.3d 1227, 1230 (8th Cir. 2015). However, under the FTCA, an injured party can hold the United States liable in tort:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Id*. (citing 28 U.S.C. § 1346(b)(1)).

Thus, the FTCA waives sovereign immunity and grants district courts jurisdiction over a certain category of claims against the United States to the extent that a private person, under like circumstances, would be liable to the plaintiff under the substantive law of the state where the alleged wrongful conduct took place. *Green Acres Enterprises, Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005). To state a cognizable claim

4

under the FTCA, the claim against the government must have a "private analogue," meaning that a similarly situated private party would be liable for the same conduct. *Id.*

However, 28 U.S.C. § 2680(a), known as the discretionary function exception, prohibits any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." The Court must determine (1) whether the agency action involves an element of judgment or choice and (2) whether that judgment is the kind that the exception was designed to shield. *Metter*, 785 F.3d at 1230-31. The exception protects governmental actions and decisions based on considerations of public policy. *Id*. at 1231. There is a rebuttable presumption that the agent's acts are grounded in policy when governmental policy allows the agent to exercise discretion. *Id.* If the government's conduct is within the discretionary function exception, the federal court lacks subject matter jurisdiction. *Croyle by & through Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018).

## DISCUSSION

Defendant contends that the Court lacks subject matter jurisdiction in this case because the government has not waived sovereign immunity for purposes of liability under the FTCA. Defendant asserts three distinct theories: (1) The St. Louis police officer who diverted foot traffic onto the grass was not a federal employee, so the

5

government is not liable for his conduct.² (2) A private entity would not be liable to Plaintiff under Missouri law because: (a) Plaintiff was not an invitee at the park but rather a licensee, so NPS had no duty to warn her of any hazard on the premises; (b) the officer's instructions were an intervening cause; and (c) FSL essentially leased the park from NPS for the festival, and landlords are not liable for a tenant's invitee's injuries when the premises are under the tenant's control. (3) NPS's maintenance of the park is a "discretionary function" protected by sovereign immunity. The Court finds Defendant's third theory meritorious and dispositive.

**Discretionary Function Exception**

As noted above, the discretionary function exception to the FTCA shields the government from liability for claims based on the exercise or performance of a discretionary function or duty on the part of a federal agency (such as NPS), even when the claim involves a failure of performance or abuse of discretion. 28 U.S.C. § 2680(a). Congress enacted the exception to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy. *Croyle*, 908 F.3d at 381. Importantly, discretionary conduct is not confined to the policy or planning level. *United States v. Gaubert*, 499 U.S. 315, 325 (1991). It is the nature of the conduct

---

² In response, Plaintiff clarifies that her complaint does not allege conduct by any particular police officer; rather, the police *department* had blocked paths for EMS vehicles such that fairgoers were diverted into the grass to exit the park.

and whether the conduct is "susceptible to policy analysis" that dictates whether the exception applies. *Id*.

*Metter* is instructive. There, a man was killed when a parked truck rolled down a riverbank where he was fishing. Guardrails had been removed for flood repair work and had not yet been replaced. The man's widow sued the government under the FTCA claiming that the Army Corps of Engineers negligently maintained the site. The district court granted the government's motion to dismiss invoking the discretionary function exception and the Eighth Circuit affirmed, reasoning that nothing in the applicable policy manual imposed a mandatory duty to install guardrails or warning signs, so the Corps' actions were discretionary. The court further reasoned that the *nature* of the Corps' action was susceptible to policy analysis because it involved the decision whether to erect warnings, balancing safety against cost. "The decision to warn is, at its core, a policy decision." *Metter*, 785 F.3d at 1232 (quoting *Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 673 (8th Cir. 2008)). It matters not whether the failure to warn was a deliberate choice or mere oversight; rather, the focus is on whether the decision is susceptible to policy analysis, regardless of whether policy was actually considered. *Hinsley*, 516 F.3d at 673 n.7.

Additionally, Defendant cites two cases where visitors fell down steps at the Arch. In *Chantal v. United States*, 104 F.3d 207 (8th Cir. 1997), a visitor who fell near the museum entrance claimed that NPS was negligent for failing to install a railing or warning sign at a shallow step. The Eighth Circuit held that the discretionary function exception barred Chantal's claim because NPS must balance safety concerns with

7

aesthetic design. *Id*. at 212-13. In *Gallardo v. United States*, 29 F. Supp. 2d 572 (E.D. Mo. 1998), this Court reached the same conclusion where a visitor fell on stairs inside the museum. Other courts have applied similar reasoning to conclude that the discretionary function exception applies where NPS must balance safety against other considerations such as the natural, historic, and recreational setting. *See e.g., Gabriel v. United States*, 3:06-CV-917-J-32HTS, 2009 WL 22289, at *6 (M.D. Fla. Jan. 2, 2009) (collecting cases and applying exception where a visitor fell off a retaining wall in the dark on the grounds of the Castillo de San Marcos); *Dierkes v. United States*, 20-CV-07685-JSW, 2021 WL 4620958, at *2 (N.D. Cal. May 7, 2021) (applying exception where a visitor fell walking through Golden Gate National Recreation Area in the dark).

The Court finds additional guidance in *Ball v. United States*, 967 F.3d 1072 (10th Cir. 2020). There, the Tenth Circuit held that the discretionary function exception shielded the government from liability where the U.S. Forest Service failed to erect railings or signage protecting motorists from an abandoned mine shaft in a national forest. The court explained that the inquiry focuses not on whether any inaction specific to that location was grounded in policy but rather on whether the agency's decisions about warnings and guardrails for off-road hazards, generally, implicated protected policy judgments. *Id*. at 1079. The court emphasized that an agency's decision is presumed to be policy-based unless the plaintiff provides evidence to the contrary. The court specifically rejected Ball's argument that one sign at one site would not detract from the scenery or unduly burden the agency, reasoning that such an expectation would require individualized decisions at countless other locations. *Id*. at 1082.

8

**NPS Safety Management**

Turning to the facts in the record here, Defendant has submitted NPS policy documents and other evidence establishing the discretionary nature of NPS's management authority in terms of public safety measures in its parks. NPS Director's Order #50C states in pertinent part:

> The means by which public safety concerns are to be addressed in each park falls under the discretion of the park's superintendent. … Superintendents must make discretionary decisions that balance public recreation and safety with preservation of the protected national, historic, or cultural setting.
>
> * * *
>
> NPS superintendents will use their discretion to determine the level of program resources and the types of programs needed to manage visitor risk within their park. This will depend on the resources, values, park-specific mission, feasibility of various program levels, activities offered in the park, nature of the park visits, degree of risk to visitors at the park, the history of visitor injury in the park, and available resources.

Doc. 8-10 at pp. 2 and 11. Additionally, NPS Management Policy 8.2.5.1, titled Visitor Safety, states in pertinent part:

> The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing. Examples include decisions about whether to install warning signs or artificial lighting … .

Doc. 8-9 at p. 15.

Specific to the Arch grounds, Defendant offers the declaration of Facility Operations Specialist Supervisor Michelle Pearce. Doc. 10-1. Pearce served as Grounds Maintenance Supervisor from 2013 until September 2019, including the time of Plaintiff's accident. Pearce was familiar with the lid in question and explained that it

9

covered a low-voltage wire box for the park's sprinkler system.  The box was under the control of contractors from 2013 to 2018 during landscape refurbishment, after which it was returned to the park and no longer used or maintained.  Pearce stated that the park had received no reports of a hazard or any trips, falls, or injuries relating to the lid before or after Plaintiff's accident on July 4, 2019.  Similarly, she noted that park employees mowed the grass around the lid and had not reported any issues.  Prior to Plaintiff's lawsuit, NPS had no information that the lid presented a danger of any kind.

**Analysis**

Applying Eighth Circuit precedent and other guidance to the foregoing evidence, the Court concludes that the discretionary function exception to the FTCA preserves the government's sovereign immunity in this case.  NPS policy documents clearly confer discretion upon park level decision-makers with respect to premises safety, including whether to install warning signs or lighting.  Pearce's declaration reflects that she was aware of the lid and had no reason to install any type of marker interrupting the landscape there.  This is precisely the type of judgment call, whether by deliberation or oversight, that the discretionary function exception is intended to protect.  The Court must not second-guess an exercise of discretion so plainly conferred on Arch personnel pursuant to NPS policy.

Nevertheless, Plaintiff contends that the discretionary function exception does not apply because it protects only the decision to *adopt* safety measures but not the operational implementation of those measures.  Plaintiff relies on *Aslakson v. United States*, 790 F.2d 688 (8th Cir. 1986), where the defendant agency failed to follow

10

applicable mandates with respect to the elevation of power lines over part of a lake, and *Mandel v. United States*, 793 F.2d 964 (8th Cir. 1986), where park rangers failed to comply with a policy to warn visitors of underwater boulders at a popular swimming site. In both cases, the Eighth Circuit reasoned that, while policymaking is protected by the discretionary function exception, operational decisions in violation of existing policies are not. But these cases pre-date *Gaubert*, where the Supreme Court squarely rejected this distinction. *Gaubert*, 499 U.S. at 325. Discretionary conduct is not confined to the policy or planning level. Rather, the focus is on the nature of the conduct rather than the status of the actor. *Id*. Here, according to NPS policy, the decision whether to warn Arch visitors of objects such as the lid was clearly discretionary.

Next, Plaintiff argues that FSL's special use permit governed signage and lighting during the fair, and NPS's performance of those provisions falls outside the exception. This theory is unpersuasive. The permit contemplates the installation of lighting towers and sponsorship signage specifically relating to the fair, not general premises safety features at issue here. Moreover, the permit imposes those obligations on FSL, not on NPS. Doc. 8-4. Nothing in the permit limits NPS's discretion.

Plaintiff also asserts that discovery is needed to identify any Arch-specific plans to ascertain whether they were followed during the fair. This argument appears to be premised on the obsolete distinction between adoption and implementation and is therefore unavailing. And the Court finds additional discovery unnecessary. Defendant has submitted applicable NPS policy documents, and the Arch superintendent's

compendium contains no relevant mandates.³  Even assuming *arguendo* that some other local plan existed, NPS's decision whether to take action with respect to the lid in question remained discretionary.  Ms. Pearce's declaration virtually forecloses any speculation that NPS abused that discretion, and in any case the exception applies "whether or not the discretion involved be abused."  28 U.S.C. §2680(a).

Finally, as an example of a special event on government premises, Plaintiff cites *Noel v. United States*, 893 F. Supp. 1410 (N.D. Cal. 1995), where the U.S. Navy devised a safety plan for an air show but elected not to include precautions for visible tie-down holes in the tarmac.  The district court deemed the discretionary function exception inapplicable because there was no evidence of competing policy considerations being balanced.  *Id*. at 1420.  *Noel* is not authoritative here, and the Court is not convinced that the Eighth Circuit would endorse its reasoning.  In *Noel*, there was evidence that the planning committee weighed the pros and cons of barriers or warning cones around the tie-down holes but ultimately concluded that such objects would be difficult to keep in place and would pose more of a hazard than the holes themselves, which were clearly visible and avoidable.  *Id*. at 1413-14.  This reflects a judgment call, and Eighth Circuit precedent instructs that the decision to warn is a policy decision.  *Metter*, 785 F.3d at 1232; *Hinsley*, 516 F.3d at 673.

---

³  Gateway Arch National Park Superintendent's Compendium, https://www.nps.gov/jeff/learn/management/superintendent-s-compendium.htm, last visited June 6, 2022.

The discretionary function exception protects governmental actions and decisions based on considerations of public policy. *Metter*, 785 F.3d at 1231. When government policy allows an agency to exercise discretion, there is a rebuttable presumption that an agent's actions are grounded in policy. *Id.* The evidence here fully supports that presumption in favor of NPS, as its policies clearly allow local park officials to weigh visitor safety against various landscape considerations specific to a given site. If the government's conduct is within the discretionary function exception, the federal court lacks subject matter jurisdiction. *Croyle*, 908 F.3d at 381. Consequently, the Court must dismiss the complaint.[4]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to file an amended complaint is **GRANTED**. Doc. 14. The Clerk is directed to detach Doc. 14-1.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss for lack of subject matter jurisdiction is **GRANTED**. Doc. 9.

A separate Order of Dismissal will accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of June 2022.

---

[4] The Court need not address Defendant's other legal theories in support of dismissal. *See Chantal*, 104 F.3d at 209 n.3 (declining to reach the issue of negligence under Missouri law where the discretionary function exception was dispositive).